IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| RICHARD W. THOMAS d/b/a THOMAS SALES COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CORK INDUSTRIES, INC., a Pennsylvania Corporation,<br><br>Defendant. | No. C11-1034<br><br>RULING ON MOTIONS FOR SUMMARY JUDGMENT |

## TABLE OF CONTENTS

I.  INTRODUCTION .................................... 2

II. PROCEDURAL HISTORY ............................. 2

III. RELEVANT FACTS ................................. 3
    A. The Parties ................................... 3
    B. The Agreements ............................... 3
       1. Superior Printing Ink Company ............. 3
       2. Shorewood Packaging Corporation ........... 4
       3. Multi Packaging Solutions ("MPS") ......... 5
       4. Inland Label & Marketing Services ......... 5
       5. Rex Corporation and Quebecor World Dubuque . 6
    C. The Alleged Breach ........................... 7

IV. SUMMARY JUDGMENT STANDARD ...................... 7

V.  DISCUSSION ...................................... 8
    A. Mutuality of Obligation ...................... 8
    B. Terminable at Will ........................... 11
    C. Damages ...................................... 12

VI. ORDER .......................................... 12

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 19) filed by the Plaintiff on October 18, 2012, the Resistance (docket number 24) filed by the Defendant on December 7, and the Reply (docket number 28) filed by the Plaintiff on December 21.

Also before the Court at this time is the Motion for Summary Judgment (docket number 20) filed by the Defendant on October 18, 2012, the Resistance (docket number 23) filed by the Plaintiff on December 7, and the Reply (docket number 29) filed by the Defendant on December 21.

Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. PROCEDURAL HISTORY

On September 6, 2011, Plaintiff Richard W. Thomas, d/b/a Thomas Sales Company ("Thomas"), filed a complaint against Cork Industries, Inc. ("Cork"). Thomas claims Cork breached five written agreements entered into between the parties in 2005 and 2006. Cork filed an answer on November 11, 2011, denying the material allegations and asserting two affirmative defenses.

On January 18, 2012, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties. Also on that date, the case was referred to the undersigned magistrate judge for the conduct of all further proceedings, in accordance with 28 U.S.C. § 636(c) and the consent of the parties. A bench trial is scheduled on February 25, 2013, with a final pretrial conference set on February 15, 2013.

On October 18, 2012, both parties timely filed the instant motions for summary judgment.

## III. RELEVANT FACTS

### A. The Parties

Plaintiff Richard W. Thomas, d/b/a Thomas Sales Company, is a resident of Dubuque, Iowa.[1] Thomas was engaged in the sale of "adhesives and coatings."[2] Defendant Cork Industries, Inc. is a Pennsylvania corporation, with its corporate offices in Folcroft, Pennsylvania. Cork manufactures and distributes adhesives and coatings used in the packaging industry. Cork operates plants in Folcroft, Pennsylvania and Jacksonville, Florida.

### B. The Agreements

Between January 2005 and July 2006, Thomas and Cork entered into five written sales agreements:

#### 1. Superior Printing Ink Company

On January 3, 2005, the parties executed an "Exclusive Sales Agent Agreement," granting Thomas "the exclusive right to solicit orders concerning [Cork's] UV/EB curable overprint coatings" from Superior Printing Ink Company of New York. The agreement, which was drafted by Thomas, provided for the payment of a 10% commission on the net amount of the invoice for products sold to Superior. The agreement stated that Thomas was an independent contractor, "who will have sole control of the manner and means of performing under this Agreement." The agreement provided that it would be "automatically self-renewing and will continue in full force and effect for a period of twenty years from the date first written above." The agreement further provided that "[t]ermination can occur only for cause of stealing, bankruptcy or as mutually agreed upon

---

[1] In its answer, Cork denies that Thomas was "at all times material hereto" a resident of Dubuque, noting that the agreement dated January 3, 2005 states that Thomas was "currently residing" in Charlestown, Indiana. This dispute is not, however, relevant to any material issue.

[2] In its answer, Cork admits that Thomas *was* engaged in the sale of adhesives and coatings, but denies that Thomas is "*currently* so engaged, for lack of information."

3

by both parties." Thomas testified that the termination provision found in the agreement was "to protect himself from being fired." Cork terminated the agreement on September 2, 2010.

In his response to Cork's statement of additional material facts, Thomas admits that he "was never able to obtain any orders from Superior for Cork." Thomas also concedes that pursuant to the agreement, he is not entitled to commissions unless Cork sells product to Superior. Finally, it is undisputed that Cork has never sold any of its products to Superior. Cork terminated the Superior agreement on September 2, 2010, due to Thomas' failure to achieve any sales of Cork products to Superior. Thomas admits that he has not lost any commissions as a result of the termination of the Superior agreement.

### 2. *Shorewood Packaging Corporation*

On August 8, 2005, the parties executed an "Exclusive Sales Agreement," granting Thomas the exclusive right to solicit orders concerning Cork's water-based and UV/EB curable overprint coatings from Shorewood Packaging Corporation of New York. The agreement, which was drafted by Thomas, provided Cork would pay Thomas 50 cents per pound for all UV/EB curable overprint coatings and 15 cents per pound for all water-based overprint coatings sold to Shorewood. The agreement provided it would continue "in full force and effect for a period of twenty years from the date first written above." According to the agreement, "[t]ermination can occur only for cause of bankruptcy or as mutually agreed upon by both parties." Thomas selected a 20-year term "because it coincided with when he wanted to retire," and included the termination language "to protect himself from being fired." Cork terminated the Shorewood agreement effective August 24, 2012.

It is undisputed that between August 8, 2005 and July 29, 2009, Cork paid Thomas commissions under the Shorewood agreement in the amount of $45,710.[3] Thomas claims

---

[3] Thomas' Statement of Undisputed Facts (docket number 19-1) refers to August 5, 200$\underline{8}$, but the Court suspects the correct date is August 5, 200$\underline{5}$ — the date the agreement was executed.

4

that additional commissions are owed through August 31, 2012 in the amount of $31,467. Cork denies the agreement is enforceable, and further denies Thomas' calculation of commissions which would be owed after July 30, 2009.

### 3. *Multi Packaging Solutions ("MPS")*

On July 15, 2006, the parties executed three more agreements. The first was an "Exclusive Sales Agreement" granting Thomas the exclusive right to solicit orders for Cork's products from Multi Packaging Solutions ("MPS"), located in Indianapolis, Indiana. Cork agreed to pay Thomas a commission of 10% of the gross invoiced amount on all products sold to MPS. The agreement had an initial term of three years and would "automatically renew annually thereafter." Pursuant to the agreement, which was drafted by Thomas, "[t]ermination can only occur as mutually and unanimously agreed by both parties." Thomas admits that the termination language was selected "to protect himself from being terminated." The MPS agreement was terminated by Cork in January or February 2009.[4]

Cork paid Thomas commissions under the MPS agreement from July 15, 2006 through July 29, 2009 in the amount of $85,552.38. Thomas claims that additional commissions are owed, through August 31, 2012, in the amount of $74,159.44. Cork denies the agreement is enforceable, and further denies Thomas' calculation of commissions which would be owed after July 30, 2009.

### 4. *Inland Label & Marketing Services*

Also on July 15, 2006, the parties entered into an "Exclusive Sales Agreement" regarding Inland Label & Marketing Services. The agreement, which was drafted by Thomas, is substantially identical to the MPS agreement. Thomas was granted the exclusive right to solicit orders for Cork's products from Inland, with Cork agreeing to pay Thomas an 8% commission on the gross invoiced amount sold. Like the MPS agreement, the Inland agreement had an initial term of three years and would automatically renew

---

[4] The parties dispute whether Thomas orally agreed to the termination.

5

annually thereafter. It could only be terminated "as mutually and unanimously agreed by both parties." Thomas drafted the termination provisions to protect himself from being terminated. Cork terminated the Inland agreement on July 23, 2009.

Cork paid Thomas commissions under the Inland agreement from July 15, 2006 through July 29, 2009 in the amount of $61,240.84. Thomas claims additional commissions in the amount of $45,909.59 are owed. Cork denies the agreement is enforceable, and further denies Thomas' calculation of commissions which would be owed after July 30, 2009.

### 5. *Rex Corporation and Quebecor World Dubuque*

The third "Exclusive Sales Agreement" executed by the parties on July 15, 2006, granted Thomas the exclusive right to solicit "new" business orders from Rex Corporation, located in Florida, and Quebecor, located in Dubuque, Iowa. The agreement is substantially identical to the agreement drafted by Thomas for use with MPS and Inland, but one of the "whereas" clauses refers to the exclusive right to "solicit new business orders," rather than the exclusive right to "solicit orders." The agreement provided Thomas would be paid 50 cents per pound for all UV/EB curable overprint coatings and 25 cents per pound for all water-based overprint coatings sold to Rex. The commission on sales to Quebecor was "to be negotiated after first order." The termination provisions in the Rex and Quebecor agreement are identical to that found in the MPS and Inland agreements. Cork terminated the agreement on July 23, 2009.

Cork paid Thomas commissions under the Rex/Quebecor agreement from July 15, 2006 through July 29, 2009 in the amount of $207,427.75. Thomas claims he is owed additional commissions under this agreement in the amount of $181,756.65, through August 31, 2012. Cork claims the agreement is not enforceable, but admits that to the extent any commissions are owed during that period of time, the amount would be $181,756.65.

## C. The Alleged Breach

Cork has terminated all of the agreements and stopped paying commissions to Thomas. Cork claims it terminated the agreements because Thomas had stopped soliciting orders and servicing the customers. Thomas claims Cork simply wanted to avoid paying him commissions.

Because the agreements stated that they may only be terminated "by mutual agreement," or for reasons not applicable here, Thomas claims that Cork has breached the contracts. Thomas argues he is entitled to additional unpaid commissions. Cork argues the agreements are unenforceable because they lack "mutuality of obligation" or, alternatively, they were terminable at will.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions,

avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

### A. Mutuality of Obligation

Cork first argues that the agreements entered into between the parties are unenforceable because they lack "mutuality of obligation." In support of its claim, Cork relies primarily on *Lewis v. Minnesota Mut. Life Ins. Co.*, 37 N.W.2d 316 (Iowa 1949). There, an insurance agent sued the insurance company, alleging breach of a contract of agency. The plaintiff claimed the company had agreed to retain him as an agent for his lifetime, terminated him without cause, and he was thereby damaged. The written contract provided that it "shall continue during the will and pleasure of the parties hereto subject to termination by any party hereto at any time. . . ." *Id.* at 318. The plaintiff asserted, however, that the agreement was orally modified to provide for a "lifetime contract." A jury returned a verdict in the plaintiff's favor. However, the trial court sustained the defendants' motion for judgment notwithstanding the verdict on the ground that the evidence was not sufficient to show that the prior written contract had been modified to provide for a lifetime agreement. The Iowa Supreme Court affirmed.

While the district court set aside the verdict on the ground that it was not supported by the evidence, the Supreme Court also considered the defendants' alternative argument that even if the contract had been orally modified, "it was terminable at will because there was no mutuality of obligation." *Id.* at 320. The Court concluded that the agreement was unenforceable, because the agent was under no obligation to perform.

> It has been uniformly held that where one party to a contract
> is not bound to perform it and cannot be held liable for failure

> of performance there is a lack of mutuality and it is unenforcible. We hold that there was no mutuality of obligation in the so-called lifetime contract because Lewis was under no obligation to continue his service as an agent for the period of his lifetime.

*Lewis*, 37 N.W.2d at 324. The Court noted that as an independent contractor, the plaintiff "could choose his own time, his manner of work, and do as little or as much as he chose in soliciting applications for the defendants. He was free to go to any place within his territory to visit such prospects as he desired, or free not to solicit at all." *Id.*

Similarly, the agreements in this case do not require Thomas to do *anything* — not even solicit orders from the companies for Cork's products. That is, the agreements grant Thomas the "exclusive right" to solicit orders from the customers, and Cork promises to pay Thomas commissions on any orders received, but Thomas doesn't promise to do *anything*. Just as in *Lewis*, Thomas was apparently free to do as much or as little as he chose, "or free not to solicit at all." Cork asserts that the agreements with Thomas were terminated because he failed to solicit orders or service customers.

The *Lewis* Court emphasized that the insurance company would have no remedy if the agent had done no work under the contract. The agent "could have gone to work in other business or for other insurance companies and nothing in the agreement or modification of the original contract afforded the defendant company any remedy." *Id.* at 325.

> If plaintiff's argument is correct, then "the defendants were tied to the plaintiff for the remainder of his natural life, no matter how he conducted himself, unless he committed a breach of one of the above provisions, while he remained absolutely free to devote to the sale of life insurance as much or as little time as he saw fit or in fact to do nothing whatever under the agency contract," as stated by defendants in argument.

*Lewis*, 37 N.W.2d at 325 (quoting *Standard Oil Co. v. Veland*, 224 N.W. 467 (Iowa 1929)). Similarly, Thomas claims in the instant action that the agreements with Cork

cannot be terminated without his consent. Under this argument, if Thomas simply stopped soliciting orders or stopped servicing Cork's customers, then Cork would have no recourse.

Mere lack of mutuality in and of itself does not render a contract invalid. *Id.* at 325. When the consideration for a contract consists of mutual promises, however, "then each promise must be enforceable in order to render the other enforceable." *Id.* (quoting *Standard Oil*). The Court in *Lewis* concluded that because the insurance company could not enforce the agent's promise to solicit customers, the contract lacked mutuality and was unenforceable.

> It is apparent that the promise of Lewis to work for the defendants was not enforcible since whether he worked or did not work, whether he took up outside lines of employment or did not, the amount of service which he rendered to the defendants would be entirely at his own option and he would not be financially liable for a failure. If Lewis could refuse at will to continue to solicit applications for life insurance in the defendant company, which in practical effect was a revocation, the right to mutuality of contract must be granted to the defendants.

*Lewis*, 37 N.W.2d at 325.

More recently, the Iowa Supreme Court recognized the doctrine of mutuality of obligation in *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641 (Iowa 1995). There, a corporation sued its former president and vice-president when they opened a competing business. One of the issues was whether the defendants intentionally interfered with a contract between the plaintiff and a third party. The Court concluded there could be no intentional interference, because the third-party agreement was "unenforceable because it lacks mutuality of obligation. Mutuality of obligation requires that unless both parties to an agreement are bound, neither is bound." *Id.* at 650. *See also Midwest Management Corp. v. Stephens*, 291 N.W.2d 896, 912 (Iowa 1980) ("[I]f mutual

promises constitute the mutual consideration of a contract, each promise must itself be enforceable in order to render the contract enforceable.").

The five agreements at issue in this case grant Thomas the "exclusive right to solicit orders" from the companies named in the agreements. Strictly speaking, while Cork promises to pay commissions on sales, Thomas does not promise to do anything. Even if it can be inferred that Thomas impliedly promises to solicit sales, Cork has no remedy for breach of that promise. That is, if Thomas fails, neglects, or refuses to solicit orders, Cork is apparently without any remedy. The Superior Printing agreement provides that Thomas has "sole control of the manner and means of performing under this Agreement. . . ." The other four agreements make no reference whatsoever to Thomas' performance. While Cork agrees to pay Thomas a commission on sales, it has no remedy if Thomas elects to do nothing. The Court concludes that because Thomas is under no obligation to perform under the agreements by soliciting orders and servicing accounts, thereby leaving Cork with no remedy, the agreements lack mutuality of obligation and are unenforceable.

### B. Terminable at Will

Because the Court has concluded that the agreements lacked mutuality of obligation and are unenforceable, it is not necessary to address Cork's alternative argument that contracts for an indefinite time are terminable at the will of either party. The Superior Ink and Shorewood agreements state the contracts will extend for 20 years. However, the MPS, Inland, and Rex/Quebecor agreements provide for an initial period of three years and "shall automatically renew annually thereafter." Even *if* Thomas had promised to solicit orders pursuant to the agreements (and leaving Cork with a remedy for a breach of the agreement), a contract for an indefinite time is terminable at the will of either party. *Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 311 (Iowa 1971) (citing *Lewis*, 37 N.W.2d at 322-24). Accordingly, the MPS, Inland, and Rex/Quebecor agreements would be terminable at will in any event.

### C. Damages

While the Court has concluded that the five agreements which are the subject of this action are unenforceable, Thomas is nonetheless entitled to commissions which he earned prior to the agreements being terminated. The Court is unable to determine on this record whether Thomas claims he is entitled to additional commissions earned prior to the termination dates. Accordingly, the Court directs the parties to submit additional briefs, not later than February 8, setting forth their respective positions on the issue of whether Thomas has additional commissions coming.

## VI. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Plaintiff's Motion for Summary Judgment (docket number 19) is **DENIED**.

2. The Defendant's Motion for Summary Judgment (docket number 20) is **GRANTED in part** and **DENIED in part** as follows: The Court finds that the five agreements identified in the complaint lack mutuality of obligation and are, therefore, unenforceable. However, Thomas is entitled to those commissions earned prior to the termination of the agreements by Cork.

3. Not later than **February 8, 2013**, both parties must file supplemental briefs on the issue of whether Thomas is entitled to additional commissions earned prior to the termination of the agreements.

DATED this 28th day of January, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA